**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**MONROE DIVISION**

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CASE NO. 3:26-CR-00138** |
| **VERSUS** | **JUDGE TERRY A. DOUGHTY** |
| **KENDRICK DARNELL WILLIAMS** | **MAG. JUDGE KAYLA D. MCCLUSKY** |

**MEMORANDUM ORDER**

Before the Court is a Report and Recommendation ("R&R") [Doc. No. 29] which recommended granting in part and denying in part a Motion to Suppress [Doc. No. 19]. The United States of America (the "Government") filed an objection, both to the original Motion [Doc. No. 25] and to the R&R [Doc. No. 32]. Defendant, Darnell Williams ("Williams") filed replies to both the Government's Response [Doc. No. 28] and the Government's Objection [Doc. No. 33].

For the reasons set forth herein, the Court **DECLINES** to adopt the Report and Recommendation [Doc. No. 29] and **DENIES** the Motion to Suppress [Doc. No. 19].

## I. BACKGROUND

On January 1, 2026, an armed robbery occurred at the North Delta Mini Mart ("Mini Mart"), 2103 Desiard Street, in Monroe, Louisiana.[1] Detective Mattie Henry ("Henry") of the Monroe Police Department investigated the case.[2] A victim of the robbery stated that a black male subject came up to him in front of the Mini Mart,

[1] [Doc. No. 28-2, p. 1].
[2] [Id.].

brandished a firearm, and robbed him of $1,600 cash.[3] The victim further alleged that the suspect approached several other individuals in the parking lot while brandishing a firearm and then fled in a red Dodge Charger.[4]

The victim also stated that the person committing the robbery was referred to as "Ken."[5] Henry obtained video footage which showed a person driving a red Dodge Charger, matching Williams' description, committing the robbery.[6] The red Dodge Charger was registered to Nicole Carr, with a registered address of 2716 South Grand Street Monroe, Louisiana.[7]

Williams' last known address was 400 Cedar Street, Monroe, Louisiana, but after monitoring the address, Henry did not observe Williams or the red Dodge Charger there.[8] On January 6, 2026, Henry then traveled to 2716 Grand Street, Monroe, Louisiana, where she knew the Dodger was registered.[9] While there, Henry observed Williams exit the residence, pull a trash can toward the sidewalk, and then return inside.[10] On the same day, the victim then identified Williams as the perpetrator in a police photo lineup.[11]

After observing Williams at 2716 South Grand Street, Henry asked for an arrest warrant for Williams,[12] a search warrant for 2716 South Grand Street,[13] and

---

[3] [Id.].
[4] [Id.].
[5] [Id.].
[6] [Id.].
[7] [Doc. No. 28-1, p. 3].
[8] [Id.].
[9] [Id.].
[10] [Id.].
[11] [Doc. No. 28-2, p. 1].
[12] [Doc. No. 28].
[13] [Doc. No. 19-2].

to search the red Dodge Charger.[14] The search warrant sought firearms, narcotics, clothing items worn during the crime, cell phones and other technology that collects data, curtilage, including the red Dodge Charger, and "any and all items deemed of evidentiary value."[15] The search warrant was signed by a state district judge on January 7, 2026.[16]

A search of 2716 South Grand Street resulted in the seizure of a Glock 17 pistol with an extended magazine under the mattress in a bedroom of the residence.[17] After initially denying any part in the armed robbery, Williams admitted he had possession of a firearm with an extended magazine at the Mini Mart and claimed the robbery victim owed him some money for some shoes.[18]

After being indicted on April 1, 2026, for possession of a firearm by a convicted felon, Williams filed a Motion to Suppress the search and the inculpating statement, arguing that the search warrant was invalid because the warrant application was "bare bones" and lacked requisite facts linking the residence to criminal activity such that no reasonable officer could have relied on the warrant.[19]

After briefing, the Magistrate Judge agreed with Williams, relying on *United States v. Wilson*, 153 F.4th 478 (5th Cir. 2025), finding that the search and subsequent statement of Williams should be suppressed. [20]

The issues have been briefed, and the court is prepared to rule.

---

[14] [Id.].
[15] [Id. at p. 3].
[16] [Id. at p. 4].
[17] [Doc. No. 28-1, p. 5].
[18] [Id.].
[19] [Doc. No. 19].
[20] [Doc. No. 29].

## II. LAW AND ANALYSIS

### a. Standard of Review

This Court's review of the Report and Recommendation from the Magistrate Judge is *de novo*. FED. R. CIV. PROC. 72(a). With respect to the Report, "[a] judge of the court shall make a *de novo* determination of those portions of the [magistrate judge's] report [and recommendation] or specified proposed findings or recommendation to which objection is made." 28 U.S.C. § 636(b)(1). Furthermore, a "judge of the court may accept, reject or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge may also receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*; *see also Hernandez v. Estelle*, 711 F.2d 619, 620 (5th Cir. 1983).

### b. The Warrant Was Supported by Probable Cause.

The Fourth Amendment requires that warrants be supported by probable cause. *United States v. Brown*, 941 F.2d 1300, 1302 (5th Cir. 1991) (per curiam). The affidavits must supply a magistrate with sufficient information to determine that probable cause exists. *Id.* at 1302–03. If a warrant lacks such support, the subsequent search violates the Fourth Amendment, the evidence is normally suppressed. *United States v. Calandre*, 414 U.S. 338, 347 (1974). "The proponent of a motion to suppress has the burden of proving, by a preponderance of the evidence, that the evidence in question was obtained in violation of his Fourth Amendment rights." *United States v. Iraheta*, 764 F.3d 455, 460 (5th Cir. 2014) (citations omitted).

Here, the Magistrate Judge found *United States v. Wilson*, 153 F.4th 478 (5th Cir. 2025) indistinguishable from the present case and relied on it in recommending suppression of the evidence.[21] The Government argues that this case is distinguishable from *Wilson*.[22]

In *United States v. Wilson*, the defendant was charged with possession of marijuana with intent to distribute, possession of a firearm in furtherance of drug trafficking, and possession of a firearm with an obliterated serial number. *Id.* at 483. The incident in *Wilson* that led to Wilson's charge occurred at a Waffle House on April 29, 2023. *Id.* at 482. Wilson got into a verbal altercation with another customer and pulled out a green pistol with a drum magazine. *Id.* at 482. The detective investigating the charge knew that Wilson's girlfriend rented an apartment at 212 Central Avenue. *Id.* at 482. The detective observed Wilson's car parked at 212 Central Avenue on May 15, 2023—sixteen days after the incident. *Id.* The detective then sought a search warrant. The warrant stated, in relevant part:

> Ricky Wilson's residence is a multi-story multi-family triplex located on the west side of Central Avenue . . . Wilson's apartment is clearly marked by a block number "212" on the white background, just to the right of the door. Intel obtained during the investigation confirmed that Wilson's girlfriend rents the apartment and witnesses have confirmed seeing Wilson at the residence.

*Id.* The affidavit described the following items to the seized: "Ammunition, drum magazine, firearms, backpacks containing firearms and any other evidence related to criminal activity observed during the search." *Id.*

---

[21] [Doc. No. 29, p. 13].
[22] [Doc. No. 32, p. 3].

A majority of the panel found the affidavit in support of the search warrant was "bare bones" because the affidavit did not link the incident to the contraband inside of the apartment that was searched. *Id.* at 485–86. The panel held the warrant rested on little more than conjecture, did not contain concrete facts upon which police officers could believe that probable cause existed, and was a "hunch dressed in paperwork." *Id.* at 482, 486–88.

The *Wilson* panel also held that

> "[t]he Fourth Amendment demands a particularized showing that the evidence is likely to be found in the place to be searched. For a search warrant, the affidavit must establish 'a fair probability that contraband or evidence of a crime will be found in a particular place.' Put differently, it 'must establish a nexus between the house to searched and the evidence sought'—either by 'direct observation or through normal inferences as to where the articles sought would be located.'"

*Id.* at 485 (citations omitted).

The Court noted that there are some items "one would normally expect" to be kept at home—such as mail, passports or bank records—that may justify a residential search. *Id.* at 486. However, the Court stated that the "affidavit had offered no facts supporting that the green pistol seen at the Waffle House ever made its way to 212 Central Avenue—or why, two weeks later, it would likely still be there." *Id.*

This Court believes there are several facts in the present case that would distinguish it from *United States v. Wilson*.

First, the search warrant in *Wilson* was executed sixteen days after the crime was committed. *Id.* at 483. The affidavit in the present case was executed only five days after the crime was committed,[23] making it more likely that evidence of the crime was still present. Second, in *Wilson*, the affidavit only stated that Wilson had been seen at his girlfriend's apartment, not that he lived there. *Id.* at 482. Since the affidavit only discussed that Wilson was seen at his girlfriend's apartment, it was less likely that he would have hidden evidence of the crime there. In the present case, Henry stated in her affidavit that "I confirmed that Williams resides at this address on 01/06/2026."[24]

Third, the police report identifies that Henry actually did investigate Williams to make this determination. Henry's Computer Aided Dispatch indicated that the red Dodge Charger was registered to Nicole Carr with a registered address of 2716 South Grand Street and that Williams' last known address was 400 Cedar Street.[25] Henry was unable to observe any individuals matching William's description or the red Dodge Charger at 400 Cedar Street.[26] She then went to 2716 South Grand Street and saw both Williams and the red Dodge Charger.[27] Henry observed Williams exit the residence, pull a trash can toward the sidewalk, and then return inside the residence.[28]

---

[23] [Doc. No. 29, pp. 4, 7].
[24] [Doc. No. 28-2, p. 2].
[25] [Doc. No. 28-1, p. 3]. The report refers to "CAD," which is an abbreviation for "Computer Aided Dispatch." *See Support Staff*, MONROE POLICE DEP'T https://monroelapolice.com/departments/support-staff/.
[26] [Id.].
[27] [Id.].
[28] [Id.].

Henry tied Williams to the 2716 South Grand Street address through surveillance and investigation; meanwhile the investigator in *Wilson* was only able to show that the home to be searched was Wilson's girlfriend's residence, not Wilson's.

Fourth, in the present case, the search warrant requested to search for items which would normally be expected to be kept at home. *See* Wilson, 153 F.4th at 486. The search warrant application for 2716 South Grand Street asked to look for firearms, narcotics, clothing, cell phones, and other technology that collects data, curtilage, and all items deemed of evidentiary value.[29] The court in *Wilson* found that a firearm alleged to be in Wilson's girlfriend's residence, 16 days after the incident, was not one of the items that would most likely be kept in the residence because firearms are portable, easily transferred, and often quickly discarded. *Wilson*, 153 F.4th at 486. On the other hand, based on Henry's investigation, it is apparent that Williams was residing at the 2716 South Grand Street address five days after the incident. A key distinguisher between *Wilson* and the present case is the amount of time; it is much more likely that the firearm would be kept in Williams' residence only days after the robbery. Since the police officers had probable cause to search for those items, they had valid reasons for seizing a firearm hidden under a mattress in the house.

**c. Even If There Was Not Probable Cause, The Good Faith Exception Applies.**

---

[29] [Doc. No. 19-2, p. 1].

Suppressing evidence is a "last resort;" therefore, the Supreme Court has iterated numerous exceptions to balance the "substantial social costs" associated with suppression. *Hudson v. Michigan*, 547 U.S. 586, 591 (2006) (citations and quotations omitted). The Supreme Court has recognized a good-faith exception where evidence obtained in good-faith reliance is admissible, even if the warrant was unsupported by probable cause. *United States v. Laury*, 985 F.2d 1293, 1311 (5th Cir. 1993); *see also United States v. Ross*, 456 U.S. 798, 823 n. 32 (1982) ("[A] warrant issued by a magistrate normally suffices to establish [good faith]."). This exception exists because the exclusionary rule is "designed to deter police misconduct," and it is an inadequate remedy when police officers have acted reasonably and in objective good faith. *United States v. Leon*, 468 U.S. 897, 916–19 (1984).

However, the good-faith exception does not apply if reliance on the warrant was itself so lacking in probable cause as to render official belief in its existence entirely unreconcilable. *Leon*, 468 U.S. at 923. This is typically the case when a magistrate or judge was misled, no reasonable officer would rely on the warrant, or if the affidavit is "so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable." *Id.* (omitting citations).

For an officer to rely on a search warrant in good faith, the facts in the affidavit "must establish a nexus between the house to be searched and the evidence sought." *United States v. Payne*¸ 341 F.3d 393, 400 (5th Cir. 2003). The question under the good-faith exception is "whether officers objectively could reasonably believe that there was such a nexus," and that nexus may be established "through direct

observation or through 'normal inferences as to where the articles sought would be located.'" *Wilson*, 153 F.4th at 485; *Payne*, 341 F.3d at 400 (quoting *United States v. Freeman*, 685 F.2d 942, 949 (5th Cir. 1982).

In the present case, even if the warrant was not supported by probable cause, Henry and the other officers objectively acted in good-faith reliance on a warrant that established a nexus between the house to be searched and the evidence sought. Henry drew a straight connection between her investigation of the robbery and the house to be searched. She had a positive identification of Williams, knew what his car was, and personally observed him at 2716 South Grand Street. This is a sufficient nexus for her to rely on in good faith.

The exclusionary rule's "sole purpose" is to deter future Fourth Amendment violations; no such purpose would be served here if the evidence was excluded. *Davis v. United States*, 564 U.S. 229, 236–37 (2011). Henry and the other officers acted in an objectively reasonable good-faith belief that their conduct was lawful, so when "their conduct involves only simple, isolated negligence, the deterrence rationale loses much of its force, and exclusion cannot pay its way." *Id.* (citations and internal quotations omitted). Public policy and the interest behind the exclusionary rule do not favor exclusion in this case.

For the above reasons, this Court finds the present case distinguishable from *United States v. Wilson*, that the affidavit and search of Williams' residence was not a "bare bones" warrant, that the warrant was supported by probable cause, and that

even if no probable cause existed, the good-faith exception to the suppression remedy would apply.

## III. CONCLUSION

For the reasons set forth herein, the Court **DECLINES** to adopt the Report and Recommendation [Doc. No. 29], and **DENIES** Williams' Motion to Suppress [Doc. No. 19].

MONROE, LOUISIANA, this 2nd day of November, 2026.

Terry A. Doughty
United States District Judge